253 P.3d 448 (2011)
STATE of Washington, Respondent,
v.
Monte W. HUNLEY, Appellant.
No. 39676-9.
Court of Appeals of Washington, Division 2.
May 17, 2011.
As Amended June 2, 2011.
*450 Manek R. Mistry, Jodi R. Backlund, Backlund & Mistry, Olympia, WA, for Appellant.
Gerald R. Fuller, James Garnet Baker, Grays Harbor Co. Pros. Ofc., Montesano, WA, for Respondent.
WORSWICK, A.C.J.
¶ 1 A jury found Monte Hunley guilty of attempting to elude a police vehicle. Hunley appeals, arguing (1) that defense counsel rendered ineffective assistance by failing to request a lesser included offense instruction for reckless driving, and (2) that provisions of the Sentencing Reform Act[1] (SRA) unconstitutionally relieve the State of its burden of proof at sentencing. Holding that reckless driving is not a lesser included offense in attempting to elude a police vehicle and that the challenged SRA provisions violate due process, we affirm Hunley's conviction and remand for resentencing, allowing the State an opportunity to prove the defendant's criminal history.

FACTS
¶ 2 On April 18, 2009, Washington State Trooper Ben Blankenship was working stationary radar duty off of Highway 12. He was in full uniform in a marked police car equipped with a light bar and siren. A black Mitsubishi Eclipse with a male driver sped past, and Trooper Blankenship used radar to measure its speed as 87 miles per hour in a 55-mile per hour zone. Trooper Blankenship followed the Eclipse, activating his lights and sirens. The Eclipse did not stop, but turned onto a two lane "rural residential" road with a posted speed limit of 30 miles per hour. Verbatim Report of Proceedings (VRP) (June 30, 2009) at 10. Trooper Blankenship estimated that the Eclipse was traveling at 70 miles per hour along this road.
¶ 3 The Eclipse sped through two stop signs and continued along two-lane roads, traveling approximately 60 miles per hour in 30- or 35-mile per hour zones. The Eclipse then turned off onto a dirt road. When Trooper Blankenship caught up to the Eclipse, it was abandoned. More officers arrived, including an officer with a tracking dog. The officers used the dog to track the car's occupants, finding Hunley nearby just below a riverbank, along with a female who had been in the car with him. Hunley admitted to being the Eclipse's driver.
¶ 4 The State charged Hunley with attempting to elude a police vehicle under RCW 46.61.024. The State also filed a special allegation under RCW 9.94A.834, alleging that one or more persons other than the defendant or the pursuing officer were threatened by Hunley's attempt to elude a police vehicle. A jury found Hunley guilty of attempting to elude a police vehicle, and returned a special verdict in the affirmative on the special allegation. At sentencing, the State offered a statement of prosecuting attorney *451 listing Hunley's prior convictions for sentencing purposes.[2] Hunley did not acknowledge his criminal history, but did not object to the statement or dispute its accuracy. Based on the statement of prosecuting attorney, the trial court calculated Hunley's offender score as a five and sentenced Hunley to the top of that standard sentencing range.

ANALYSIS

I. Ineffective Assistance of Counsel
¶ 5 Hunley first argues that he was denied effective assistance of counsel at trial. He claims that because reckless driving is a lesser included offense in attempting to elude a police vehicle, defense counsel rendered ineffective assistance by failing to request a lesser included offense instruction. The State responds that pursuant to a 2003 amendment to RCW 46.61.024, reckless driving is no longer an included offense of attempting to elude a police vehicle. The State is correct.
¶ 6 The Sixth Amendment to the United States Constitution and article I, § 22 of the Washington State Constitution guarantee effective assistance of counsel. In re Pers. Restraint of Riley, 122 Wash.2d 772, 779, 863 P.2d 554 (1993); State v. Sardinia, 42 Wash.App. 533, 538, 713 P.2d 122 (1986). Denial of effective assistance is manifest error affecting a constitutional right, reviewable for the first time on appeal. See State v. Holley, 75 Wash.App. 191, 196-97, 876 P.2d 973 (1994); RAP 2.5(a). Appellate courts review ineffective assistance claims de novo. State v. Cross, 156 Wash.2d 580, 605, 132 P.3d 80 (2006).
¶ 7 Washington follows the ineffective assistance of counsel test set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In re Pers. Restraint of Stenson, 142 Wash.2d 710, 720, 16 P.3d 1 (2001). In order to show that he received ineffective assistance of counsel, a defendant must show (1) that defense counsel's conduct was deficient, and (2) that the deficient performance resulted in prejudice. State v. Reichenbach, 153 Wash.2d 126, 130, 101 P.3d 80 (2004). Because both prongs must be met, a failure to show either prong will end the inquiry. See State v. Fredrick, 45 Wash.App. 916, 923, 729 P.2d 56 (1986).
¶ 8 Under the Workman[3] test, a party is entitled to a lesser included offense instruction where "(1) each element of the lesser offense is a necessary element of the greater offense charged (the legal prong) and (2) the evidence in the case supports an inference that only the lesser crime was committed (the factual prong)." State v. Meneses, 169 Wash.2d 586, 595, 238 P.3d 495 (2010); In re Pers. Restraint of Crace, 157 Wash. App. 81, 106, 236 P.3d 914 (2010). Under the legal prong, an offense is not included in a crime when it is possible to commit the greater offense without committing the lesser offense. State v. Turner, 143 Wash.2d 715, 729, 23 P.3d 499 (2001) (quoting State v. Roybal, 82 Wash.2d 577, 583, 512 P.2d 718 (1973)). Under the factual prong, the evidence must support an inference that the defendant committed only the proposed lesser included offense. State v. Prado, 144 Wash.App. 227, 241-42, 181 P.3d 901 (2008) (quoting State v. Karp, 69 Wash.App. 369, 376, 848 P.2d 1304 (1993)).
¶ 9 Hunley's claim cannot satisfy the legal prong of the Workman test because it is possible to attempt to elude a police vehicle without committing reckless driving. A person is guilty of reckless driving when that person drives a vehicle in willful or wanton disregard for the safety of persons or property. RCW 46.61.500(1). In contrast, a person is guilty of attempting to elude a police vehicle when (1) a uniformed police officer signals the person to stop by hand, voice, emergency light, or siren; (2) the police officer is in a vehicle equipped with lights and sirens; (3) the defendant willfully fails or refuses to immediately bring the vehicle to a stop after *452 being signaled to stop; and (4) the defendant drives his or her vehicle in a reckless manner. See RCW 46.61.024(1).
¶ 10 It is well settled that "in a reckless manner" means "driving in a rash or heedless manner, indifferent to the consequences." State v. Roggenkamp, 153 Wash.2d 614, 621-22, 106 P.3d 196 (2005). This is a lower mental state than the "willful or wanton" mental state required for reckless driving. State v. Ridgley, 141 Wash.App. 771, 782, 174 P.3d 105 (2007). Because one can drive "in a reckless manner" without "willful or wanton disregard for the safety of persons or property," one can be guilty of attempting to elude a police vehicle without being guilty of reckless driving. Consequently, reckless driving is not a lesser included offense in attempting to elude a police vehicle and Hunley was not entitled to a lesser included offense instruction under the legal prong of the Workman test.[4]
¶ 11 Because Hunley was not entitled to a lesser included offense instruction, any claim to that effect at trial would have failed. Hunley has therefore failed to demonstrate that his trial counsel's performance prejudiced him, and his ineffective assistance claim fails.

II. Burden of Proof at Sentencing
¶ 12 Hunley also contends the 2008 amendments to RCW 9.94A.500 and .530 violate due process.[5] He argues that these sections of the SRA unconstitutionally relieve the State of its burden to prove prior convictions. We agree.
¶ 13 Our Supreme Court has consistently held that the State meets its constitutional burden to prove prior convictions at sentencing when it proves such convictions by a preponderance of the evidence. See State v. Ford, 137 Wash.2d 472, 479-80, 973 P.2d 452 (1999). In Ford, the court held that the State's "bare assertions, unsupported by evidence" are insufficient to prove a defendant's prior convictions. 137 Wash.2d at 482, 973 P.2d 452. The Ford court held that, under the basic principles of due process, the facts relied on in sentencing must have some basis in the record. 137 Wash.2d at 482, 973 P.2d 452 (quoting State v. Bresolin, 13 Wash.App. 386, 396, 534 P.2d 1394 (1975)). The court further held that the prosecutor's assertions are neither facts nor evidence, but merely argument. Ford, 137 Wash.2d at 483 n. 3, 973 P.2d 452. In its analysis, the court noted the critical importance of due process at sentencing, quoting the ABA Standards for Criminal Justice:
The meaning of appropriate due process at sentencing is not ascertainable in strictly utilitarian terms. There is an important symbolic aspect to the requirement of due process. Our concept of the dignity of individuals and our respect for the law itself suffer when inadequate attention is given to a decision critically affecting the public interest, the interests of victims, and the interests of the persons being sentenced. Even if informal, seemingly casual, sentencing determinations reach the same results that would have been reached in more formal and regular proceedings, the manner of such proceedings does not entitle them to the respect that ought to attend this exercise of a fundamental state power to impose criminal sanctions.
Ford, 137 Wash.2d at 484, 973 P.2d 452 (quoting Am. Bar Ass'n, ABA, Standards for Criminal Justice: Sentencing std. 18-5.17 at 206 (3d ed.1994)).
¶ 14 Based on this analysis, the court held:

*453 The State does not meet its burden through bare assertions, unsupported by evidence. Nor does failure to object to such assertions relieve the State of its evidentiary obligations. To conclude otherwise would not only obviate the plain requirements of the SRA but would result in an unconstitutional shifting of the burden of proof to the defendant.

Ford, 137 Wash.2d at 482, 973 P.2d 452 (emphasis added). In other words, constitutional due process requires the State to meet its burden of proof at sentencing. The defendant's silence is not constitutionally sufficient to meet this burden. The court has reaffirmed this rule in subsequent opinions, including In re Pers. Restraint of Cadwallader, 155 Wash.2d 867, 876, 123 P.3d 456 (2005); State v. Bergstrom, 162 Wash.2d 87, 93, 169 P.3d 816 (2007); and State v. Mendoza, 165 Wash.2d 913, 928-29, 205 P.3d 113 (2009).[6]
¶ 15 In 2008, the legislature amended RCW 9.94A.500(1) to add, "A criminal history summary relating to the defendant from the prosecuting authority . . . shall be prima facie evidence of the existence and validity of the convictions listed therein." Laws of 2008, ch. 231, § 2. And the legislature amended RCW 9.94A.530(2) to add that "not objecting to criminal history presented at the time of sentencing" constitutes acknowledgement of the criminal history. Laws of 2008, ch. 231, § 4. These amendments attempt to overrule Ford and its progeny by providing that a criminal history summary provides prima facie evidence of criminal history, and that failure to object to this summary constitutes acknowledgement. However, the legislature has no power to modify or impair a judicial interpretation of the constitution. Seattle Sch. Dist. No. 1 of King Cnty. v. State, 90 Wash.2d 476, 497, 585 P.2d 71 (1978). Ford was based on the constitutional principle of due process. 137 Wash.2d at 482, 973 P.2d 452. Thus, the 2008 amendments to RCW 9.94A.500(1) and RCW 9.94A.530(2) cannot constitutionally convert a prosecutor's "bare assertions" into evidence or shift the burden of proof by treating the defendant's silence as acknowledgement.
¶ 16 RCW 9.94A.500(1) is not facially unconstitutional. Rather, it is unconstitutional as applied when used to relieve the State of its burden of proof at sentencing. So long as a "criminal history summary" includes sufficient evidence of prior convictions, it does not violate due process for the State to use such a summary as prima facie evidence of criminal history. However, RCW 9.94A.530(2) is facially unconstitutional insofar as it provides that the defendant's failure to object to the "bare assertions" in a criminal history summary constitutes acknowledgement. Ford and its progeny make clear that, unless the defendant affirmatively acknowledges his criminal history, the State must meet its burden to prove prior convictions by presenting at least some evidence.
¶ 17 Here, the statement of prosecuting attorney is exactly the type of "bare assertion" rejected in Ford. The unsworn document simply lists the crimes that the prosecutor believes Hunley to have been convicted of. Under Ford, such allegations are not evidence. The trial court violated Hunley's right to due process of law by sentencing him based on facts for which there was no evidence in the record. Therefore, we vacate Hunley's sentence.
¶ 18 Hunley argues that he should be resentenced with an offender score of zero. We disagree.
¶ 19 On remand, the State may present evidence of Hunley's past convictions. "When a defendant raises a specific objection at sentencing and the State fails to respond with evidence of the defendant's prior convictions, then the State is held to the record as it existed at the sentencing hearing." Mendoza, 165 Wash.2d at 930, 205 P.3d 113. "But where, as here, there is no objection at sentencing and the State consequently has not had an opportunity to put on its evidence, it is appropriate to allow additional evidence at sentencing." Mendoza, 165 Wash.2d at 930, 205 P.3d 113. Moreover, this remedy is consistent with RCW 9.94A.530(2), which *454 provides, "On remand for resentencing . . . the parties shall have the opportunity to present and the court to consider all relevant evidence regarding criminal history, including criminal history not previously presented."
¶ 20 Before concluding, we address some of the arguments made by the dissent. First, the dissent argues that Hunley waived any objection to his criminal history by failing to object. But we may consider manifest error affecting a constitutional right for the first time on appeal. RAP 2.5(a). Moreover, the dissent's argument is directly contrary to Ford and we cannot accept it. See Ford, 137 Wash.2d at 477, 973 P.2d 452 ("In the context of sentencing, established case law holds that illegal or erroneous sentences may be challenged for the first time on appeal.")
¶ 21 The dissent also argues that Ford was decided under the SRA and did not announce a constitutional rule. But the Supreme Court unambiguously stated that treating the defendant's silence as acknowledgement would not only violate the SRA, but would also unconstitutionally shift the burden of proof.[7]Ford, 137 Wash.2d at 482, 973 P.2d 452.
¶ 22 We acknowledge that the Ford court emphasized that it was placing "no additional burden on the State not already required under the SRA." 137 Wash.2d at 482, 973 P.2d 452. But this does not lead to the conclusion that Ford is based only on the SRA and not on due process. The Ford court noted that in State v. Ammons, 105 Wash.2d 175, 186, 713 P.2d 719, 718 P.2d 796 (1986), the court "held that the use of a prior conviction as a basis for sentencing under the SRA is constitutionally permissible if the State proves the existence of the prior conviction by a preponderance of the evidence." 137 Wash.2d at 479-80, 973 P.2d 452 (emphasis added). The Ammons court based this holding on the rule that defendants have "a liberty interest which minimal due process protects" at sentencing. 105 Wash.2d at 186, 713 P.2d 719, 718 P.2d 796. We recognize that Ammons did not announce that preponderance of the evidence is the lowest evidentiary standard permissible at sentencing. But in holding the State to that standard, the Ford court was adhering not only to the statutory requirements of the SRA, but also to the constitutional requirement of minimal due process. We disagree with the dissent not as to the constitutionally required standard of evidence at sentencing, but rather as to the character of the State's assertions of Hunley's criminal history. In our view, the State provided no evidence whatsoever of Hunley's criminal history, failing to satisfy even minimal due process.
¶ 23 Next, the dissent attempts to distinguish Ford on the grounds that there, the State relied on oral assertions as to the defendant's criminal history. Here, in contrast, the State relied on a written summary of the defendant's criminal history. But under Mendoza, this is a distinction without a difference. There, the State filed a statement of prosecuting attorney which listed the defendant's criminal history, listing the sentencing court and the date of each crime. Mendoza, 165 Wash.2d at 917-18, 205 P.3d 113. The court held that such a statement was not evidence of criminal history. See Mendoza, 165 Wash.2d at 929, 205 P.3d 113. So too here, the unsworn, written criminal history summary was not evidence of Hunley's criminal history.
¶ 24 We acknowledge that the legislature has amended RCW 9.94A.500(1) to provide that a criminal history summary shall be prima facie evidence of criminal history. But as noted above, under Ford, due process requires the State to offer some evidence of criminal history, and a prosecutor's assertions are not evidence. Defendants have a constitutional right to be sentenced based on evidence in the record; the legislature cannot strip this right by passing a law which simply labels the State's bare assertions as evidence.[8]
*455 ¶ 25 Finally, the dissent argues that the 2008 amendments to the SRA do not shift the burden of proof at sentencing because they do not require the defendant to provide evidence refuting the State's asserted criminal history. Rather, the defendant need only object to the statement of criminal history. Because the defendant need not produce evidence, argues the dissent, the burden of proof is not shifted. This argument is logically sound, but again, based on the unambiguous language of Ford, we cannot agree. The Ford court held that relying on the defendant's silence as acknowledgement "would not only obviate the plain requirements of the SRA but would result in an unconstitutional shifting of the burden of proof to the defendant." Ford, 137 Wash.2d at 482, 973 P.2d 452. This is binding precedent, and in the absence of any Supreme Court directive to the contrary, we are compelled to follow it.
¶ 26 We affirm Hunley's conviction but remand for resentencing.
I concur: VAN DEREN, J.
HUNT, J. (concurring in part and dissenting in part).
¶ 27 I concur in the majority's affirmance of Hunley's conviction, but I dissent from their remand for resentencing. I respectfully disagree with their holdings that (1) the 2008 amendments to RCW 9.94A.500(1) and.530(2) are unconstitutional; and (2) the trial court erred in applying these statutes in sentencing Hunley without first sua sponte requiring the State to document his prior convictions outlined in the State's presentence summarythe accuracy of which Hunley did not challenge below and does not challenge on appeal. I would affirm Hunley's sentence.

I. Ford

¶ 28 The majority holds that the State's written presentence summary of Hunley's prior offenses is constitutionally insufficient under State v. Ford, 137 Wash.2d 472, 973 P.2d 452 (1999). See Majority at 452-53. The majority concludes that this summary amounts to nothing more than a "bare assertion[]" of Hunley's prior convictions, unsupported by evidence. Majority at 453. In my view, Ford does not compel the majority's conclusion. Unlike Ford, Hunley neither challenged the State's summary of his prior convictions[9] nor demanded that the State provide supporting documentary proof at sentencing. Ford, in contrast, expressly objected to the State's calculation of his offender score, arguing that his three prior California convictions should not count toward his offender score because they resulted only in civil commitment. Ford, 137 Wash.2d at 475, 973 P.2d 452. The State orally asserted that these prior convictions would be classified as felonies under comparable Washington law, but it did not introduce supporting evidence. Ford, 137 Wash.2d at 475-76, 973 P.2d 452. Yet, despite Ford's objection, "California statutes under which Ford was convicted were not offered into evidence," "[n]o comparable Washington statutes were identified," and the trial court apparently "did not engage *456 in any comparison of statutory elements." Ford, 137 Wash.2d at 475-76, 973 P.2d 452.
¶ 29 The State conceded on appeal that it had not introduced evidence to support its felony comparability classification of Ford's California convictions. But it asserted that (1) a timely express objection by Ford at sentencing would have allowed the State to develop the record to support its classifications, Ford, 137 Wash.2d at 478, 973 P.2d 452; and (2) thus, Ford's failure to object was the reason for the absence of additional evidence. Ford, 137 Wash.2d at 478, 973 P.2d 452. Rejecting this argument, the Supreme Court concluded that the State had "fail[ed] to recognize [its] duties and obligations under the [Sentencing Reform Act]," which requires classification of a defendant's out-of-state convictions according to comparable Washington offenses and proof of a defendant's criminal history by a preponderance of the evidence. Ford, 137 Wash.2d at 479-80, 483, 973 P.2d 452. The Ford court reasoned that, although the Sentencing Reform Act of 1981[10] (SRA) in effect at the time allowed the sentencing court to rely on information contained in a presentence report if "acknowledged" by a defendant's failure to object at sentencing: (1) this SRA "acknowledgment" provision did not extend to the prosecutor's "bare assertions" of the defendant's criminal history, Ford, 137 Wash.2d at 483, 973 P.2d 452, which, in Ford, were bare oral assertions; and (2) because the State offered no evidence that Washington law would have classified Ford's challenged California convictions as felonies, the SRA did not authorize the sentence imposed. Ford, 137 Wash.2d at 485-86, 973 P.2d 452.

II. RCW 9.94A.500(1) and.530(2) Amended
¶ 30 In 2008, in response to Ford and other recent sentencing cases, our legislature amended the SRA "to ensure that sentences imposed accurately reflect the offender's actual, complete criminal history." Laws of 2008, ch. 231, § 1. To meet this objective, the legislature amended RCW 9.94A.500(1) to allow the State to prove a defendant's criminal history by submitting a "criminal history summary," which, the legislature further provided, "shall be prima facie evidence of the existence and validity of the convictions listed therein." RCW 9.94A.500(1).
¶ 31 The legislature also amended RCW 9.94A.530(2) to allow a sentencing court to rely on the State's criminal history summary when the defendant does not object, as had been the practice with presentence reports under earlier versions of the statute. The amended version of this statute provides:
In determining any sentence other than a sentence above the standard range, the trial court may rely on no more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing, or proven pursuant to RCW 9.94A.537. Acknowledgment includes not objecting to information stated in the presentence reports and not objecting to criminal history presented at the time of sentencing.

RCW 9.94A.530(2), Laws of 2008, ch. 231, § 4(2) (new language emphasized).
¶ 32 The majority holds that the 2008 amendments to RCW 9.94A.500(1) and.530(2) violate due process because they "unconstitutionally relieve the State of its burden to prove prior convictions." Majority at 452. Respectfully, I disagree. Ford, on which the majority heavily relies, delineates three different "burdens" that the SRA and due process principles place on the State and the defendant with respect to the defendant's prior convictions at sentencing: "the ultimate burden"[11] and the "primary burden of proof,"[12] both borne by the State; and "the *457 burden of refutation," borne by the defendant. See Ford, 137 Wash.2d at 480-82, 973 P.2d 452. The State met its two burdens here; Hunley never had to bear the third burden.

A. "Ultimate" Statutory Burden of Proof Remains on the State
¶ 33 The Ford court held that the pertinent portion of the SRA then in effect placed on the State the "ultimate burden of ensuring the record supports the existence and classification of out-of-state convictions." Ford, 137 Wash.2d at 480, 973 P.2d 452 (emphasis added). The State's mere oral assertions, unsupported by any evidence whatsoever, did not meet this burden in Ford.
¶ 34 The Ford court's holding responded to (1) the State's "blame[ing]" its failure to produce any evidence to support the comparability of Ford's California convictions on Ford's "failure to object at sentencing," Ford, 137 Wash.2d at 478, 973 P.2d 452; and (2) the State's contention that, "had Ford objected to the State's asserted classification at sentencing and requested an evidentiary hearing, a record would have been developed to decide the issue." Ford, 137 Wash.2d at 478, 973 P.2d 452. Our Supreme Court rejected this argument as "fail[ing] to recognize the State's duties and obligations under the SRA," Ford, 137 Wash.2d at 479, 973 P.2d 452, by relieving completely the State's "ultimate burden of ensuring the record supports the existence and classification of out-of-state convictions." Ford, 137 Wash.2d at 480, 973 P.2d 452. The Ford court concluded that eliminating this "ultimate burden" of the State would be "`inconsistent with the principles underlying our system of justice.'" Ford, 137 Wash.2d at 480, 973 P.2d 452 (internal quotation marks omitted). I fully agree with the majority's citation of Ford for this holding and underlying principle. See Majority at 452-53.
¶ 35 I disagree, however, with the majority's expansion of Ford to hold here that the State did not meet its burden by presenting an uncontroverted written summary of Hunley's criminal history, on which, under the currently applicable statutes, the trial court was entitled to rely in the absence of Hunley's challenge or request for additional documentary proof from the State. In holding that the SRA placed on the State an "ultimate burden" to demonstrate "the alleged criminal history" sufficiently, the Ford court did not specify the type of evidence the State must produce; it did note, however, that this ultimate burden "is not overly difficult to meet."[13]Ford, 137 Wash.2d at 480, 973 P.2d *458 452. Nevertheless, the State's bare "oral[] assert[ions]" during the sentencing hearing that Ford's California convictions were comparable to Washington felonies and failure to provide any written summary or other evidence of Ford's prior convictions did not meet this relatively easy burden. Ford, 137 Wash.2d at 475, 973 P.2d 452. In short, unlike here, the State did not produce prima facie evidence of Ford's criminal history on which the trial court was entitled to rely under the applicable sentencing statutes.[14]

B. Primary Due Process Burden of Proof Remains on the State
¶ 36 The Ford court went on to hold that, in addition to the State's failure to satisfy its "ultimate burden" under the SRA, the State's total lack of evidence of Ford's prior convictions also violated "the minimum requirements of due process." Ford, 137 Wash.2d at 480-81, 973 P.2d 452. The Ford court held that "fundamental principles of due process prohibit a criminal defendant from being sentenced on the basis of information which is false, lacks a minimum indici[um] of reliability, or is unsupported in the record." Ford, 137 Wash.2d at 481, 973 P.2d 452 (citations omitted). The court rejected the State's contention that Ford's failure to object relieved the State of its due process obligation to provide "some minimal indicium of reliability beyond mere allegation":[15] "A criminal defendant is simply not obligated to disprove the State's position, at least insofar as the State has failed to meet its primary burden of proof" by producing only "bare [oral] assertions." Ford, 137 Wash.2d at 482, 973 P.2d 452 (emphasis added).

C. No Shifting of Burden or Placing Burden of "Refutation" on Defendant
¶ 37 Thus, the Ford court described a third burden, "the burden of refutation," which, the court held, is constitutionally impermissible to place on the defendant "where the State offers no evidence in support of its position" and, therefore, fails to meet its constitutionally-imposed "primary" burden. Ford, 137 Wash.2d at 481-82, 973 P.2d 452. In so holding, however, the Ford court did not foreclose the possibility that the inverse of this statement is true: If the State satisfies its primary, constitutional burden of proof, then it would be constitutionally permissible to place some kind of burden on the defendant to challenge the State's proof; the court then described the defendant's "burden of refutation."[16]Ford, 137 Wash.2d at 481, 973 P.2d 452.
*459 ¶ 38 Yet, our legislature's post-Ford amendment of RCW 9.94A.500(1) and RCW 9.94A.530(2) did not impose such a "burden of refutation" on a criminal defendant; nor, contrary to the majority's assertion, did the legislature attempt to "overrule" or to contravene Ford. Majority at 453. Instead, the only "burden" the legislature placed on the defendant is to object to the "criminal history presented at the time of sentencing" if he does not want the trial court to consider it as prima facie evidence of his prior convictions. RCW 9.94A.530(2); RCW 9.94A.500(1).
¶ 39 The legislature amended RCW 9.94A.500 to include the following sentence:
A criminal history summary relating to the defendant from the prosecuting authority. . . shall be prima facie evidence of the existence and validity of the convictions listed therein.
RCW 9.94A.500(1). Correspondingly, the legislature amended RCW 9.94A.530 to authorize sentencing courts to rely on information that is "acknowledged" during "the time of sentencing," including "criminal history presented at the time of sentencing" to which the defendant does "not object[]." RCW 9.94A.530(2). Neither amendment, either separately or operating in tandem, requires the defendant to produce any evidence to refute the State's summary of his prior convictions. Instead, he need only object to the criminal history the State has presented.[17] This objection (1) bars the trial court from considering the State's criminal history as proof of his convictions because the defendant has not "acknowledged" it under RCW 9.94A.530(2); and (2) triggers an additional burden on the State to produce more evidence proving the defendant's prior convictions[18] because at that point it cannot rely on the summary as prima facie evidence under RCW 9.94A.500(1).[19]

*460 D. No Legislative Impairment of Ford

¶ 40 I disagree with the majority's assumption that in amending RCW 9.94A.530(2) and RCW 9.94A.500(1), the legislature was attempting to "modify or impair a judicial interpretation of the constitution." Majority at 453 (citing Seattle Sch. Dist. No. 1 of King County v. State, 90 Wash.2d 476, 497, 585 P.2d 71 (1978)). This assumption ignores the Ford court's distinction between the State's statutory "ultimate burden" under the SRA, which the 2008 amendments modified, and the State's constitutional "primary burden of proof" as a key component of due process, which these amendments left intact.[20]Ford, 137 Wash.2d at 480-482, 973 P.2d 452. In amending the SRA in 2008, the legislature provided that (1) the State could satisfy the SRA's burden of proving a defendant's prior convictions for sentencing purposes[21] through "criminal history summar[ies]";[22] and (2) when analyzing whether the State has satisfied the SRA's "ultimate burden," the sentencing court may consider as an "acknowledge[ment]"[23] of the information in the State's summary of his criminal history the *461 defendant's lack of objection to the summary[24] and his failure to demand additional documentary proof from the State.[25]
¶ 41 It is the legislature's duty to establish the punishments for crimes. See State v. Manussier, 129 Wash.2d 652, 667, 921 P.2d 473 (1996) ("This court has consistently held that fixing penalties for criminal offenses is a legislative, and not a judicial, function.") (footnote omitted), cert. denied, 520 U.S. 1201, 117 S.Ct. 1563, 137 L.Ed.2d 709 (1997). The SRA, as amended, purported to standardize punishments using defined parameters,[26] which entailed delineating what information a sentencing court considers when imposing a sentence within statutorily-defined standard ranges for specific categories of crimes.[27] This information includes the defendant's prior conviction history, which has direct bearing on where, within the applicable statutory parameters, the presumptive sentencing range falls for a particular defendant convicted of a specified crime.[28] This legislative prerogative includes prescribing the format in which the defendant's criminal history is presented, so long, of course, as the format does not contravene our state or federal constitutions. And, as I explain above, under the statutory scheme that the legislature prescribed in its 2008 amendments to the SRA, the burden of proving a defendant's prior convictions at sentencing always remains on the State and never passes to the defendant.
¶ 42 As the Supreme Court noted post-Ford, "No question has been raised ... about the constitutional limits of the legislature's ability to define when an acknowledgement occurs." State v. Mendoza, 165 Wash.2d 913, 922 n. 2, 205 P.3d 113 (2009). Furthermore, we must presume these statutory amendments to be constitutional. See Sch. Dists.' Alliance for Adequate Funding of Special Educ. v. State, 170 Wash.2d 599, 605, 244 P.3d 1 (2010). Moreover, in concluding that the State could not satisfy the SRA's procedural requirements for establishing Washington comparability of Ford's prior California convictions with mere oral assertions, our Supreme Court cautioned that other courts should not construe its holding as placing a heavier burden on the State than the SRA required. See Ford, 137 Wash.2d at 482, 973 P.2d 452. Thus, distinguishing Ford on statutory interpretation principles alone, I would hold that Hunley has not overcome his heavy burden to prove that these presumptively constitutional statutory amendments are "unconstitutional beyond a reasonable doubt." Sch. Dists.' Alliance, 170 Wash.2d at 605, 244 P.3d 1 (citing Wash. Fed'n of State Employees v. State, 127 Wash.2d 544, 558, 901 P.2d 1028 (1995)).

*462 CONCLUSION
¶ 43 The trial court sentenced Hunley in compliance with the presumptively constitutional, amended SRA requirements for proving a defendant's prior convictions. The State followed these amended SRA procedures by presenting a criminal history summary, which, under RCW 9.94A.500(1), the sentencing court could consider as prima facie evidence of Hunley's prior convictions if Hunley did not object. I would reject Hunley's due process challenge and affirm his sentence. Accordingly, I respectfully dissent from the majority's conclusion that the 2008 amendments to RCW 9.94A.500 and .530 are unconstitutional and its remand for resentencing Hunley.
NOTES
[1] Chapter 9.94A RCW.
[2] The statement of prosecuting attorney was an unsworn document setting forth Hunley's alleged prior convictions, including their cause numbers. It listed the date of one out of six alleged offenses and did not list the date of any of the convictions.
[3] State v. Workman, 90 Wash.2d 443, 447-48, 584 P.2d 382 (1978).
[4] Hunley cites State v. Argueta, 107 Wash.App. 532, 539, 27 P.3d 242 (2001) for the proposition that reckless driving is a lesser included offense in attempting to elude a police vehicle. But Argueta was decided under a prior version of RCW 46.61.024 which provided the mental element of "wanton or willful disregard," identical to reckless driving. Former RCW 46.61.024(1) (1983). The legislature amended the attempted eluding statute in 2003, replacing the "wanton or willful" mental state with "reckless manner" and abrogating Argueta's holding. RCW 46.61.024(1).
[5] Hunley also argues that these amendments violate the right to remain silent at sentencing. Because we find that the amendments violate due process by unconstitutionally shifting the burden of proof at sentencing, we do not address the right to remain silent.
[6] We note that our Supreme Court recently reaffirmed Mendoza in State v. Weaver, 171 Wash.2d 256, 251 P.3d 876 (2011). Because Weaver is based on the pre-2008 SRA, it does not change our analysis below. See 171 Wash.2d at 259-60, 251 P.3d at 877.
[7] The dissent questions our reliance on this holding by pointing to the Ford court's statement that "[a] criminal defendant is simply not obligated to disprove the State's position, at least insofar as the State has failed to meet its primary burden of proof." 137 Wash.2d at 482, 973 P.2d 452. This holding does not impugn our analysis because, in our view, the State failed to meet its primary burden of proof by failing to present any evidence of Hunley's criminal history.
[8] We further acknowledge that the Mendoza court noted, "No question has been raised in these cases about the constitutional limits of the legislature's ability to define when an acknowledgment occurs." 165 Wash.2d at 922 n. 2, 205 P.3d 113. This fact does not impact our analysis here. In our view, Ford leaves room for only one conclusion as to the constitutionality of the 2008 amendment to RCW 9.94A.530(2).
[9] The presentence summary that the State prepared for Hunley, titled "Statement of Prosecuting Attorney," listed Hunley's prior convictions by type and degree of crime, cause number, and sentencing court. Clerk's Papers (CP) at 27-28. I agree that it might be preferable for such summaries to include additional information, such as conviction and sentencing dates, length of sentence, and release date, if applicable; but their absence here does not change my analysis.

Hunley never objected to the absence of such information, claimed that the evidence presented was inadequate or incorrect, or requested additional information about his prior convictions beyond what the State had provided in its summary. Furthermore, by virtue of RCW 9.94A.500(1) and .530(2), he was on notice that the sentencing court could consider the State's summary of his prior convictions if he voiced no objection. Therefore, in my view, he has waived any objections and cannot now complain for the first time on appeal that necessary evidence of his uncontested prior convictions was lacking.
[10] RCW Ch. 9.94A.
[11] The "ultimate burden," which the SRA places on the State, requires the State to "introduce evidence of some kind to support the alleged criminal history." Ford, 137 Wash.2d at 480, 973 P.2d 452. Ford made clear that this "ultimate burden" is statutory, while the "primary burden" is constitutional. The State must satisfy this statutory "ultimate burden" by a preponderance of the evidence. See RCW 9.94A.500(1); Ford, 137 Wash.2d at 480, 973 P.2d 452.
[12] The "primary burden of proof," which due process principles impose on the State, requires the State to provide sentencing information that has "`some minimal indicium of reliability beyond mere allegation.'" Ford, 137 Wash.2d at 481, 973 P.2d 452 (emphasis omitted) (internal quotation marks omitted) (quoting United States v. Ibarra, 737 F.2d 825, 827 (9th Cir.1984)). In contrast, the State must satisfy its statutory burden of proof under RCW 9.94A.500(1) by a preponderance of the evidence.

The majority points out that in Ford our Supreme Court described its holding in State v. Ammons, 105 Wash.2d 175, 713 P.2d 719, 718 P.2d 796, (1986) as: "[T]he use of a prior conviction as a basis for sentencing under the SRA is constitutionally permissible if the State proves the existence of the prior conviction by a preponderance of the evidence." Majority at 454 (emphasis omitted) (quoting Ford, 137 Wash.2d at 479-80, 973 P.2d 452 (citing Ammons, 105 Wash.2d at 186, 713 P.2d 719, 718 P.2d 796)). The Ford court's characterization of Ammons is accurate, but it does not support the majority's proposition.
In Ammons, the question before our Supreme Court was whether due process requires the State to prove a defendant's prior convictions beyond a reasonable doubt for sentencing purposes. Ammons, 105 Wash.2d at 185, 713 P.2d 719, 718 P.2d 796. Our Supreme Court answered this question in the negative and then held that the preponderance of the evidence standard was sufficient to satisfy due process requirements. See Ammons, 105 Wash.2d at 185-86, 713 P.2d 719, 718 P.2d 796. But the Ammons court did not hold that the preponderance of the evidence standard was necessary to satisfy due process.
In my view, a close reading of Ammons reveals that our Supreme Court did not make preponderance of the evidence the constitutional "floor"; instead, Ammons leaves open the possibility that a lesser quantum of evidence could satisfy due process. Therefore, my reading of Ammons is consistent with my assertion that Ford delineated two separate burdens: (1) the SRA's statutory standard, which requires a preponderance of the evidence; and (2) the constitutional burden, which requires "`some minimal indicium of reliability beyond mere allegation,'" less than a preponderance of the evidence. Ford, 137 Wash.2d at 481, 973 P.2d 452 (emphasis omitted) (internal quotation marks omitted).
[13] The Ford court did not take issue with the "preponderance of the evidence" level of proof, which our legislature established in RCW 9.94A.500(1).
[14] In my view, our Supreme Court's recent decision in State v. Weaver, 171 Wash.2d 256, 251 P.3d 876 (2011) does not compel a different conclusion. Weaver analyzes former RCW 9.94A.530(2) (2000) and affirms its previous holding that "`presentence reports' in former RCW 9.94A.530(2) d[o] not include the prosecutor's statement of criminal history." Weaver, ¶ 7 (internal quotation marks omitted) (citing State v. Mendoza, 165 Wash.2d 913, 205 P.3d 113 (2009)). Eight years after promulgating the Weaver version of the statute, our legislature amended RCW 9.94A.530 to read, "Acknowledgement includes . . . not objecting to criminal history presented at the time of sentencing." Laws of 2008, ch. 231, § 4(2). Accordingly, Weaver, which applied a different, earlier version of the statute, does not apply here.
[15] Ford, 137 Wash.2d at 481, 973 P.2d 452 (quoting U.S. v. Ibarra, 737 F.2d at 827 (emphasis omitted)).
[16] For example, this "burden of refutation" might entail the defendant's asking the State to present additional documentary evidence of his prior convictions, which, I reemphasize, Hunley did not do.

The majority interprets Ford as holding that "relying on the defendant's silence as acknowledgement `would not only obviate the plain requirements of the SRA but would result in an unconstitutional shifting of the burden of proof to the defendant.'" Majority at 455 (quoting Ford, 137 Wash.2d at 482, 973 P.2d 452). With all due respect, I believe the majority overlooks the Supreme Court's language preceding its Ford quote, which language undercuts the majority's interpretation. Earlier in the paragraph that the majority cites, the Ford court states, "A criminal defendant is simply not obligated to disprove the State's position, at least insofar as the State has failed to meet its primary burden of proof." Ford, 137 Wash.2d at 482, 973 P.2d 452 (emphasis added).
Thus, the Ford court left open the possibility that (1) the "burden of refutation" could be placed on the defendant; and (2) the sentencing court could take cognizance of the defendant's failure to trigger that burden by requesting additional evidenceprovided that the State satisfied its primary, constitutional burden by establishing the defendant's prior convictions with "some minimal indicium of reliability beyond mere allegation." Ford, 137 Wash.2d at 481, 973 P.2d 452 (quoting U.S. v. Ibarra, 737 F.2d at 827 (emphasis omitted)). Ford held that the State may not rely on "mere [oral] allegation," Ford, 137 Wash.2d at 481, 973 P.2d 452, of a defendant's criminal history coupled with the defendant's failure to object.
But Ford did not hold, as the majority asserts, that the sentencing court is prohibited under all circumstances from taking note of the defendant's failure to object to the State's written criminal history summary and then proceeding to sentence the defendant in reliance on this uncontested summary. This opening in the Ford opinion provides the window of opportunity for the legislature's amendment of RCW 9.94A.530 to allow the trial court to treat as an "acknowledgement" a defendant's failure to object to his criminal history presented at the time of sentencing, on which the trial court may justifiably rely.
[17] The majority mentions Hunley's claim that the State violated his right to remain silent during sentencing, but it does not further address this particular issue. See Majority at 452 n. 5. Nevertheless, the majority appears to fold this concept into its holding that the amended statutory procedure for including prior convictions in a defendant's offender score unconstitutionally shifts the burden of proof from the State to the defendant by allowing the State to present a summary of the defendant's criminal history and requiring additional documentary proof only if the defendant so requests or objects. See Majority at 453.

In my view, this assertion circumvents the conceptual distinction between calculating an offender score to determine a standard sentencing range and the State's absolute burden to prove the elements of a substantive charged crime and specific factual sentencing aggravators beyond a reasonable doubt.
Furthermore, to the extent that Hunley and the majority characterize the statutory amendment as violative of a defendant's Fifth Amendment right to remain silent, I again respectfully disagree. The legislature's disjunctive use of the terms "admitted, acknowledged, or proved" in RCW 9.94A.530(2), by its plain language, provides at least three separate methods of presenting information on which the sentencing court may rely. "`When the term `or' is used it is presumed to be used in the disjunctive sense, unless the legislative intent is clearly contrary.'" Childers v. Childers, 89 Wash.2d 592, 595-96, 575 P.2d 201 (1978) (quoting 1A C. Dallas Sands, Norman J. Singer & J.G. Sutherland, Statutes and Statutory Construction § 21.14 n. 1 (4th ed.1972)). The defendant's own admission is one; the State's submission of proof is another. And "acknowledgement" is a third, which, by statutory definition, does not require a defendant to waive his right to remain silent: "Acknowledgment includes not objecting to information stated in the presentence reports and not objecting to criminal history presented at the time of sentencing." RCW 9.94A.530(2) (emphasis added).
[18] As the Ford court noted, a defendant could request, for example, "a certified copy of the judgment," which, as the Supreme Court acknowledged and none of us dispute, is "[t]he best evidence of a prior conviction." Ford, 137 Wash.2d at 480, 973 P.2d 452 (citing State v. Cabrera, 73 Wash.App. 165, 168, 868 P.2d 179 (1994)).
[19] As previously noted, the pertinent portion of RCW 9.94A.530(2) allows the sentencing court to rely only on "information [] admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing, or proven pursuant to RCW 9.94A.537 [aggravating circumstances, not applicable here]."
[20] The Rules of Evidence, promulgated by our Supreme Court, provide an analogous, though somewhat attenuated, evidentiary scheme in ER 904. To prove a material fact in a civil action, ER 904 declares certain documents admissible unless the other party objects, which then may trigger an additional burden on the offering party to prove authenticity or to demonstrate admissibility. Although ER 904 addresses substantive proof in civil actions, and not sentencing hearings following convictions in criminal actions, it does establish precedence for (1) placing on the first party a burden of productionto come forward with presumably admissible evidence, analogous to the statutory prima facie evidence of prior convictions at issue here; and (2) then shifting to the other party the burden of objecting to the evidence before the first party is required to produce additional evidence supporting the initial documentary evidence. Furthermore, there are myriad instances in which our trial courts of various levels routinely use computer-generated print outs of defendants' prior convictions for sentencing purposes.
[21] These amendments address prior convictions for sentencing purposes only. They do not address the use of prior convictions to prove elements of crimes, such a being a felon in possession of a firearm, for example, which the State must prove beyond a reasonable doubt, not by a mere preponderance of the evidence.
[22] In a footnote, the Ford court stated, "[A] prosecutor's assertions are neither fact nor evidence, but merely argument." Ford, 137 Wash.2d at 481 n. 3, 973 P.2d 452. The prosecutor in Ford provided no written criminal history summary; he made only bald oral assertions. Ford, 137 Wash.2d at 475-76, 973 P.2d 452. In contrast, here, the prosecutor presented a written criminal history summary, which, under RCW 9.94A.500(1), constitutes "prima facie evidence" of a defendant's prior criminal history for offender score purposes. Thus, this amended statute implies that such summary is more than "mere argument" for sentencing purposes. Moreover, the prosecutor's summary here appears to have been based on computer records of Hunley's criminal history, which provides "minimum indicia of reliability," even under Ford. Ford, 137 Wash.2d at 481, 973 P.2d 452.
[23] The majority cites State v. Mendoza, 165 Wash.2d 913, 205 P.3d 113 (2009) to support its holding that the State's summary of a defendant's criminal history is not sufficient evidence of his prior convictions. See Majority at 453. But Mendoza stresses the lack of documentary proof or the defendant's "acknowledgement" of his prior convictions as dual grounds for remand for resentencing; in other words, both were lacking in that case. Mendoza, 165 Wash.2d at 917-19, 205 P.3d 113. The court later notes, "[W]e have emphasized the need for an affirmative acknowledgement by the defendant of facts and information introduced for the purposes of sentencing." Mendoza, 165 Wash.2d at 928, 205 P.3d 113 (citing Ford, 137 Wash.2d at 482-83, 973 P.2d 452). The dictionary defines "acknowledgement" as having "received" and "recognized the authority or claims of" the thing being acknowledged, which, under this statutory scheme, is the defendant's criminal history summary. Webster's Third International Dictionary 17 (1969).

The Mendoza court further noted, however: "Mendoza and Henderson did nothing affirmative with respect to their criminal histories. And the sentencing courts below did not have any facts or information on which to find by a preponderance of the evidence that the criminal history was valid." Mendoza, 165 Wash.2d at 929, 205 P.3d 113. As I discuss throughout this dissent, such was not the case here. More importantly, as the Mendoza court also noted post-Ford, "No question has been raised . . . about the constitutional limits of the legislature's ability to define when an acknowledgement occurs." Mendoza, 165 at 922 n. 2, 205 P.3d 113.
[24] I further note that, unlike independent evidence of substantive crimes that may initially be within the State's exclusive control, a person previously convicted of crimes in a court of law is likely to be at least as knowledgeable about his prior convictions as the State, if not more knowledgeable. In my view, this reason alone underscores the inherent reasonableness of the legislature's statutory creation of prima facie evidence of a defendant's prior convictions when the State presents his criminal history summary that the defendant does not challenge in any way.
[25] The amended version of RCW 9.94A.530(2) treats the State's summary of a defendant's criminal history in the same way as the same statute's predecessor version treated a defendant's criminal history information contained in a presentence report, the use of which our Supreme Court expressly approved in Ford. Ford, 137 Wash.2d at 480-81, 973 P.2d 452. Here, neither the majority nor Hunley persuade me that there is any difference of constitutional due process significance between these two statutory procedures for presenting prima facie evidence of a defendant's criminal history for offender score calculation purposes, especially, where, as here, the defendant did not object to his criminal history's accuracy, challenge the sufficiency of the State's evidence, or request additional documentation.
[26] See RCW 9.94A.010 ("The purpose of [the SRA] is to make the criminal justice system accountable to the public by developing a system for the sentencing of felony offenders which structures, but does not eliminate, discretionary decisions affecting sentences.")
[27] See 9.94A.530(2) ("In determining any sentence other than a sentence above the standard range, the trial court may rely on no more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing, or proven pursuant to RCW 9.94A.537 [aggravating circumstances, not applicable here].")
[28] See RCW 9.94A.510, .515, .517, .518 (sentencing grid and related provisions).